UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RAY A. LEWIS,<br><br>              Plaintiff,<br><br>   v.<br><br>RENCY HILBERT, et al.,<br><br>             Defendants. | CASE NO. 3:23-cv-05539-RSL-BAT<br><br>**REPORT AND RECOMMENDATION GRANTING SUMMARY JUDGMENT AND DISMISSING CASE** |

Before the Court is a motion for summary judgment filed by Rency Hilbert, the sole Defendant remaining in this case, Dkt. 17, and Plaintiff's motion to stay the case for the purpose of exhausting his prison administrative remedies. Dkt. 22.

This action was initiated on June 14, 2023, when Plaintiff, Ray A. Lewis, a detainee at the Stafford Creek Correctional Center submitted a complaint seeking § 1983 relief. The complaint named as Defendants Rency Hilbert, Assistant Food Service Manager, Ronald Attard, Food Service Manager, Jeffery Adams, Chaplain, and Jason Bennett, Superintendent. Plaintiff alleged that on April 5, 2023, Defendants denied him participation in a Passover Meal in violation of the Religious Land Use and Institutional Person Act (RLUIPA). Plaintiff requested the Court declare Defendants violated his rights under the First Amendment and the RLUIPA and impose monetary damages against each Defendant.

On August 3, 2024, the Honorable Robert S. Lasnik dismissed with prejudice Defendants Jeffery Adams, ARNP Boudrieau, Ronald Attard, and Jason Bennett, and ordered the case proceed solely against Defendant Rency Hilbert, limited to the claim that Defendant Hilbert violated Plaintiff's First Amendment rights on April 5, 2023 by denying Plaintiff a Passover meal. Dkt. 10.

On January 29, 2024, Defendant Hilbert file a motion for summary judgement, supporting declarations, and a *Rand* admonition and notice. Dkts. 17-21. Defendant contends the case should be dismissed with prejudice because Plaintiff failed to exhaust his administrative remedies and because the allegations in the complaint lack merit. The motion for summary judgment was noted for February 23, 2024.

On February 8, 2024, Plaintiff filed a motion to stay this action in order "to complete the exhaustion requirements of the Prisoner's Litigation Reform Act. Plaintiff misunderstood his Level 2 Resolution response which states: No further actions are necessary." Dkt. 22. The motion to stay was also noted for February 23, 2023.

The Court having reviewed all pleadings and the record recommends summary judgment in favor of Defendant be GRANTED because Plaintiff failed to properly exhaust his administrative remedies before filing this lawsuit. A stay of proceedings should be denied. The motion to stay acknowledges Plaintiff failed to exhaust his administrative remedies in 2023. Plaintiff's February 2024 attempt to now exhaust his remedies for alleged violations that occurred in April 2023 are untimely and thus futile.

Where a federal court determines that a plaintiff has failed to properly exhaust his or her administrative remedies it may dismiss the case without addressing a Defendant's additional grounds for dismissal on the merits. *See Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (If

feasible, exhaustion should be decided before reaching the merits of a claim). However, the Court in this instance has also considered Defendant's contention that the complaint's allegations lack merit and concludes Plaintiff's should also be dismissed on the merits.

## FACTS

**A.     The Amended Complaint and Defendant's Factual Assertions**

On June 21, 2023, Plaintiff submitted a two count § 1983 complaint. Count I alleged Rency Hilbert, Robert Attard, Jeffrey Adams, and Jason Bennett violated Plaintiff's First Amendment right to free exercise of religion by denying him "participation in Passover." In specific, Plaintiff alleged on April 5, 2023, he was denied participation in "the Passover meal" and ordered to return to his unit by Defendant Hilbert. Plaintiff alleged on April 6, 2023 he contacted Chaplain Adams "who refused to determine if the medical diet was valid." Plaintiff alleged ARNP Boudrieau reviewed his medical records on April 13, 2023, and "could not fund where a therapeutic diet was requested."  Plaintiff also alleged "Ronald Attard is the Food Service Manager who supervises Rency Hilbert. Jason Bennett is the superintendent of this institution which makes him ultimately responsible for its operations."

In Count II, Plaintiff alleged Defendants Hilbert, Attard, Adams and Bennett denied Plaintiff participation in Passover in violation of the RLUIPA. In support, Plaintiff again alleged Defendant Hilbert denied Plaintiff a Passover Meal on April 5, 2023 and ordered him back to his unit; On April 6, 2023, Chaplain Adams refused to determine if a "medical diet was valid"; and on April 14, 2023, ARNP Boudrieau could not find in Plaintiff's records where a therapeutic diet was requested. Plaintiff further realleged "Ronald Attard is the Food Service Manager who supervises Rency Hilbert. Jason Bennett is the superintendent of this institution which makes him ultimately responsible for its operations."

1    As relief, Plaintiff requested the Court enter declaratory judgment that Plaintiff's rights under the RLUIPA and First Amendment were violated, and that the Court award hm punitive damages.

On June 21, 2023, the Court ordered Plaintiff to file an amended complaint, because RLUIPA permits injunctive relief but does not allow for recovery of the monetary damages that Plaintiff sought and because the complaint did not set forth any facts that injunctive relief should be granted.

On June 6, 2025, Plaintiff filed a one count amended complaint, alleging the same Defendants named in the original complaint violated his First Amendment rights to free exercise of religion. In the amended complaint, Plaintiff essentially repeats the allegations Plaintiff raised in Count I of the original complaint. The amended complaint again alleges Rency Hilbert, Robert Attard, Jeffrey Adams, and Jason Bennett violated Plaintiff's First Amendment right to free exercise of religion by denying him "participation in Passover." Plaintiff again alleges that on April 5, 2023, he was denied participation in "the Passover meal" and ordered to return to his unit by Defendant Hilbert. On April 6, 2023, Plaintiff alleges he contacted Chaplain Adams "who refused to determine if the medical diet was valid." Plaintiff alleges ARNP Boudrieau reviewed his medical records on April 13, 2023, and "could not fund where a therapeutic diet was requested." Plaintiff alleges "Ronald Attard is the Food Service Manager who supervises Rency Hilbert. Jason Bennett is the superintendent of this institution which makes him ultimately responsible for its operations."

On August 3, 2024, the Honorable Robert S. Lasnik dismissed with prejudice Defendants Jeffery Adams, ARNP Boudrieau, Ronald Attard, and Jason Bennett, and ordered the case proceed solely against Defendant Rency Hilbert, limited to the claim that Defendant Hilbert

REPORT AND RECOMMENDATION GRANTING
SUMMARY JUDGMENT AND DISMISSING CASE - 4

violated Plaintiff's First Amendment rights on April 5, 2023 by denying Plaintiff a Passover meal. Dkt. 10.

On January 29, 2024, Defendant Hilbert filed a motion for summary judgment contending the complaint should be dismissed for two reasons. Dkt. 17. Plaintiff did not respond to the motion other than moving to stay proceedings for the purpose of exhausting his prison administrative remedies.

In moving for summary judgment, Defendant Hilbert first contends the Court should dismiss the complaint because Plaintiff failed to exhaust his administrative remedies. *See* Dkt. 17. In support, Defendant Hilbert submitted the Washington Department of Corrections Resolution Program Manuel. Dkt. 18 (Declaration of Carol Smith, Ex. 1). Ms. Smith is the Program Manager in the Office of Correctional Operations, Washington State Department of Corrections and avers that at the time of the actions complained of in Plaintiff's complaint, the Department of Corrections had a Resolution Program Manuel that provides for a resolution procedure involving four levels of review: Level 0 (informal level); Level I (first formal review); Level II (second formal review); Level III (Third and final formal review). *See* Smith Declaration, Ex. 1.

Ms. Smith avers she has reviewed Plaintiff's Resolution Requests record and since 1988 Plaintiff has filed 47 complaints utilizing the Department of Corrections's resolution program, one of which proceeded to Level III, the third and final review. Dkt. 18, Smith Declaration at 4 and exhibit 2.

As to the allegations contained in Plaintiff's complaint, Ms. Smith avers Plaintiff submitted a Resolution Request on April 7, 2023 alleging he was denied a Passover meal. *See* Dkt. 18, ex. 3. Ms. Smith avers that at the 0 Level of review, the Chaplain indicated Plaintiff's

medical diet superseded Plaintiff's request for a Passover meal. *Id.* Plaintiff's request then proceeded to Level I and on May 16, 2023, the prison made an "unsubstantiated finding" based upon a lack of evidence, and information that was posted and memos that were sent out containing instructions to prisoners about how to obtain a waiver of a therapeutic diet to receive a Passover meal. *Id.* Ms. Smith avers Plaintiff did not take the necessary steps to obtain a Passover meal, did not appeal the Level I determination and thus did not exhaust all levels of appeal in the Department of Corrections' Resolution Program. *Id.*

Plaintiff has not filed anything contesting the fact the Department of Corrections has a Resolution Program Manuel setting forth four levels of review; he has utilized the Department's resolution procedures 47 times and once through Level III; and that he did not appeal the Level I determination that his grievance that he was improperly denied a Passover meal in April 2023 was rejected as unsubstantiated. *See* Dkt. 22 (Plaintiff's Motion for Stay). Rather Plaintiff requests his case be "stayed" to permit him to exhaust his administrative remedies because he "misunderstood his Level 2 Resolution response." *Id.* In support of the motion to stay, Plaintiff attached a copy of the Level I response provided by the Department of Corrections. The Responses states:

> Your level one resolution request regarding your denial to participate in the Passover mainline diet was reviewed by CUS Fenn. During the review you were interviewed and stated that you wanted to continue with the resolution and run it up the chain to ultimately change the policy regarding diets vs religious diets. CUS Fenn reviewed your resolution, the informal response by RS Sayre, and the memos from Statewide Religious Specialist Zilvinas Jakstas. Per the Statewide Religious Specialist, if an individual is on a therapeutic diet, he/she will need to see a medical provider to remove them from their therapeutic diet. This must be completed prior to the January 17, 2023, deadline. This information was also posted in the Sign-up Form when an individual elects to sign up for Passover. After review of all documentation surrounding this concern your level one resolution has been deemed unsubstantiated

REPORT AND RECOMMENDATION GRANTING
SUMMARY JUDGMENT AND DISMISSING CASE - 6

> at this time. There is no evidence that shows you were denied a religious meal. Staff were following current protocols outlined in the religious event. No further actions are necessary. Thank you.

*Id.* Plaintiff's motion to stay the case for the purpose of exhausting his administrative remedies regarding the April 2023 Passover meals is an acknowledgment that Plaintiff did not proceed past level I and thus did not exhaust his administrative remedies.

Defendant Hilbert also moves for summary judgment on the grounds Plaintiff failed to complete the prison's requirements to obtain a Passover Meal in 2023 and thus fails to state a claim for relief under the First Amendment. Defendant Hilbert further contends that even if Plaintiff had a right to a Passover meal in 2023, a reasonable prison staff member would not have known that a request for a religious meal supersedes a prisoner's therapeutic diet. In support, Patty Willoughby avers the Department of Correction has promulgated policies and guidelines to provide nutritional intervention to incarcerated individuals with a medical necessity that were in effect in 2023.  Dkt 19 referring to Exhibit 1.

Defendant Hilbert, the prison Food Service Manager avers he is familiar with the protocol for prisoners with a medical diet restriction who requests a religious diet as set forth in Department of Corrections (DOC) Policy 610.240, and a memo distributed on March 22, 2023. *See* Dkt. 20. The March 2023 memo indicates in pertinent part "in preparation of the 2023 Ramadan and Passover, prisoners were provided a "sign-up deadline" so the prison could order religious meals based upon the number of prisoners who signed up. The memo further states if a prisoner is on a therapeutic diet and has seen their medical provider, they must contact medical to update OMNI.  If a prisoner is on a therapeutic diet and does not meet with their medical provider, they will not receive the Ramadan or Passover meal as indicated on the sign-up form. *See* Dkt 20, Ex. 1.

REPORT AND RECOMMENDATION GRANTING
SUMMARY JUDGMENT AND DISMISSING CASE - 7

Defendant Hilbert avers that Advance Care Practitioner Sarrami ordered a medical diet for Plaintiff for the time period between September 2022 through September 19, 2023. Plaintiff asked for a Passover meal in early April 2023. After reviewing Plaintiff's request, Defendant denied the request because Plaintiff was actively subject to a medically approved diet and had not obtained the required medical provider approval to have a Passover meal in lieu of his medical diet. *Id.*

## STANDARDS OF REVIEW

The Court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the initial burden of production to demonstrate the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(a); *see Devereaux v. Abbey,* 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To meet this burden, the movant need not introduce any affirmative evidence (such as affidavits) but may simply point to absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

A nonmoving party's noncompliance with local rules in opposing a motion for summary judgment does not relieve the moving party of its affirmative duty to demonstrate it is entitled to judgment as a matter of law. *Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003). "If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). The non-moving party may not rely upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue

for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A plaintiff must "produce at least some significant probative evidence tending to support" the allegations in the complaint. *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990).

Here, Plaintiff seeks relief under §1983. To state a claim under 42 U.S.C. § 1983, a complaint must allege: (a) the conduct complained of was committed by a person acting under color of state law, and (b) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *See Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985).

Plaintiff alleges he is entitled to § 1983 relief because Defendant Hilbert violated his First Amendment right to free exercise of religion by denying him a Passover meal in April 2023. To state claim under the Free Exercise Clause of the First Amendment, Plaintiff must show Defendant Hilbert burdened the practice of his religion, by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests. *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987) (footnote omitted)).

"In order to reach the level of a constitutional violation, the interference with one's practice of religion 'must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine.'" *Freeman*, 125 F.3d at 737 (citing *Graham v. C.I.R.*, 822 F.2d 844, 851 (9th Cir. 1987)).  Indeed, while prisoners retain First Amendment protections, their "right to freely exercise [their] religion is limited by institutional objectives and by the loss of freedom concomitant with incarceration." *Hartmann v. California*

REPORT AND RECOMMENDATION GRANTING
SUMMARY JUDGMENT AND DISMISSING CASE - 9

*Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (*citing O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1997)).

First Amendment protections are triggered only when prison officials substantially burden the practice of a prisoner's religion by preventing them from engaging in conduct they sincerely believe is consistent with their faith. *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008). But a prison regulation may impinge upon a prisoner's right to free exercise of religion "'if it is reasonably related to legitimate penological interests.'" *Id*. at 884-85 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). As the Ninth Circuit has explained:

> A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion. A substantial burden ... places more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs.... To ensure that courts afford appropriate deference to prison officials, the Supreme Court has directed that alleged infringements of prisoners' free exercise rights be judged under a reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights. The challenged conduct is valid if it is reasonably related to legitimate penological interests.

*Jones v. Williams*, 791 F.3d 1023, 1031-32 (9th Cir. 2015) (internal quotations and citations omitted) (emphasis added).

A prison policy requiring prisoners to submit a request before receiving religious meals is reasonably related to legitimate penological interests and is not unconstitutional. *Resnick v. Adams*, 348 F.3d 763, 770-71 (9th Cir. 2003); *McKenzie v. Ellis*, 541 F. App'x 784, 785 (9th Cir. 2013) ("[R]equiring [an inmate] to re-apply to the religious diet program at his new prison [was] related to valid penological interests and did not unduly burden his ability to practice his

REPORT AND RECOMMENDATION GRANTING
SUMMARY JUDGMENT AND DISMISSING CASE - 10

religion."); *see also Woods v. Paramo*, 2019 WL 3532831, at *6 (S.D. Cal. Aug. 2, 2019); *Taylor v. Pelican Bay*, 2010 WL 2671989, at *7-8 (N.D. Cal. July 2, 2010).

## DISCUSSION

### A.     Exhaustion of Administrative Remedies

Defendant Hilbert contends the Court should dismiss the complaint because Plaintiff failed to exhaust his administrative remedies. The Prison Litigation Reform Act of 1995 ("PLRA") provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is a prerequisite to all prisoner lawsuits concerning prison life, whether such actions involve general conditions or particular episodes, whether they allege excessive force or some other wrong, and even if they seek relief not available in grievance proceedings, such as money damages. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

Prisoners must not only fully exhaust available prison administrative remedies, but they also must exhaust those remedies in a timely manner and must abide by the administrative rules governing the internal grievance process. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). To effectively exhaust prison administrative remedies, an inmate must use all the formal steps of the prison grievance process. *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009). Because the purpose of exhaustion is to give prison administrators a chance to resolve the issues, the inmate must exhaust each of his or her claims through grievances containing enough factual specificity to notify officials of the alleged harm. *Id*. at 1120.

Here there is no dispute the Department of Corrections has a formal dispute resolution process that is set forth in the Resolution Program Manuel; This Manuel was effective during the

time period at issue; Plaintiff was aware of the dispute resolution process and has utilized it many times, up to the final level of review, before filing the present law suit; and Plaintiff did not exhaust his remedies as to the denial of a Passover meal in April 2023. Plaintiff admits as much in moving the court to stay this case for the purpose of allowing him to exhaust his administrative remedies.

However, Plaintiff's motion to stay the case is futile because Plaintiff's failure to timely exhaust his remedies in 2023 now bar him from attempting to properly exhaust his remedies at this point in 2024. In 2023, Plaintiff complained to the prison that he had been denied a Passover. meal at Level 0 and Level I of the prison dispute resolution process. Plaintiff in fact attached the Level I response to his motion to stay contending he went no further than that level. The prison's Resolution Program Manuel states "If the Individual disagrees with a response at Level 0-II, they may file an appeal withing the timeframes on page 5 of this manual." Dkt. 18, Ex. 1 at 13.  Page 5 of the Resolution Program Manuel states a prisoner must file an appeal to Level II within 10 working days of receiving a Level I response.  *Id.* at 11. If a prisoner seeks to appeal a Level II decision, the prisoner must file the appeal with 10 working days of receiving the Level II response. *Id.*

Here, Plaintiff concedes he never proceeded past Level I as he never appealed the determination the prison made at that level. There is thus no dispute that Plaintiff failed to exhaust his administrative remedies, and no dispute that he further failed to exhaust his remedies within the time limits set forth in the prison's Resolution Program Manuel. Plaintiff's motion to stay the case for the purpose of exhausting remedies is thus futile.

Plaintiff contends he did not exhaust his remedies in 2023 because he misunderstood the prison's Level I response. He thus seeks an exception to the requirement that he exhaust his

administrative remedies in a timely manner and in compliance with the administrative rules governing the Department of Correction's internal grievance process. However, the Court may not "engraft" exceptions to the PLRA's exhaustion requirement. *Ross v. Blake*, 578 U.S. 632, 648 (2016) (Rejecting Circuit Court's holding that a Court may excuse the PLRA exhaustion requirement if it finds "special circumstances" such as the prisoner "'reasonably'—even though mistakenly—believed he had sufficiently exhausted his remedies.'"). Plaintiff requests a stay on the grounds he misunderstood the Level I resolution response which states, "no further actions are necessary." This is the prison's response to Plaintiff's grievance that it would not take further actions because they are not necessary, and not a directive that Plaintiff was relieved of exhausting his remedies or had exhausted his remedies. In any event, even if Plaintiff reasonably mistook the prison's response, the Supreme Court's decision in *Ross v. Blake*, precludes excusing Plaintiff from fully exhaust available prison administrative remedies in a timely manner as required by *Woodford v. Ngo*.

Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim. *Albino v. Baca*, 737 F.3d 1162, 1170 (9th Cir. 2014). Only if the district judge holds the prisoner has exhausted available administrative remedies, that administrative remedies are not available, or that a prisoner's failure to exhaust available remedies should be excused, may the case proceed to the merits. *Id*. at 1171.

Here, there can be no dispute that Plaintiff failed to properly and timely exhaust the administrative remedies that were available to him in 2023. Plaintiff admits as much in requesting a stay to exhaust his remedies. His claim he misunderstood the Level I response is as a matter of law insufficient to excuse the requirement he exhaust his remedies in compliance

REPORT AND RECOMMENDATION GRANTING
SUMMARY JUDGMENT AND DISMISSING CASE - 13

1 with the prison's grievance process, including within the time limits set. This case should
2 accordingly be dismissed with prejudice.

3   **B.   First Amendment Right to Free Exercise**

4   Defendant also contends the Court should grant summary judgment because he did not violate Plaintiff's First Amendment right to free exercise of religion. It is undisputed Plaintiff was prescribed a therapeutic diet effective from September 2022 through September 2023 and the Prison advised all prisoners that if they wished to participate in the 2023 Passover meal and failed to meet with their medical provider, they will not receive a Passover meal. *See* Dkt 20, Ex. 1. Plaintiff did not meet with his medical provider and obtain approval to replace his therapeutic meal with a Passover meal. As indicated above, a prison policy requiring prisoners to submit a request before receiving religious meals is reasonably related to legitimate penological interests and is not unconstitutional. The prison has a legitimate penological interest in promulgating a policy that a prisoner must clear a prescribed therapeutic diet with the health provider before the prison may replace that meal with a religious meal. Defendant Hilbert's conformance with the prison's policy that medical clearance was needed before replacing a therapeutic meal with a religious meal did not violate Plaintiff's constitutional rights. Based upon the undisputed facts, Plaintiff's First Amendment claim thus fails as a matter of law.

Because the Court finds Defendant Hilbert did not violate Plaintiff's First Amendment rights, the Court need not address the claim of qualified immunity.

## CONCLUSION

There is no dispute the Department of Corrections has a formal dispute resolution process and that Plaintiff failed to properly and timely utilize that process to exhaust the administrative remedies that were available to him in 2023. Plaintiff admits as much by filing a motion on

REPORT AND RECOMMENDATION GRANTING
SUMMARY JUDGMENT AND DISMISSING CASE - 14

February 8, 2024 to stay this action to permit him to exhaust his remedies. Plaintiff's motion to stay should be denied as futile because his attempts to exhaust are untimely. Plaintiff seeks an exception to the requirement that he must appeal the Level I determination within a certain time by claiming he misunderstood the prison's Level I response to his grievance. But the Supreme Court has held the court cannot engraft exceptions to a prison's dispute resolution process such as a prisoner reasonably believed he had sufficiently exhausted his remedies in order to allow a prisoner to exhaust remedies. Plaintiff's belief he had exhausted his remedies, even if reasonable, is thus not grounds, as a matter of law, to excuse his failure to properly and timely exhaust his prison administrative remedies. The case should accordingly be dismissed for failure to exhaust remedies.

The case should also be dismissed because there is no dispute the prison advised prisoners that if they wished to receive a 2023 Passover meal and they were on a therapeutic diet, they would be denied the religious meal if they did not first meet with their medical provider and obtain clearance to replace the therapeutic meal with a religious meal. The prison has a legitimate penological purpose for creating policies to manage therapeutic meals in this fashion. Plaintiff failed to meet the prison's policy requirements and thus as a matter of law failed to state a claim for relief under the First Amendment.

**OBJECTIONS AND APPEAL**

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **March 12, 2024.** The Clerk should note the matter for **March 15, 2024**, as ready for the District Judge's

consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed 15 pages.

The failure to timely object may affect the right to appeal.

DATED this 26th day of February, 2024

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION GRANTING
SUMMARY JUDGMENT AND DISMISSING CASE - 16